UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| ABDUL MEHAMED SIED,<br><br>Petitioner,<br><br>v.<br><br>KIRSTJEN NIELSEN, et al.,<br><br>Respondents. | Case No. 17-cv-06785-LB<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION FOR SUPERVISED RELEASE**<br><br>Re: ECF No. 50 |

## INTRODUCTION

Petitioner Abdul Mehamed Sied, a Jeberti Muslim originally from Eritrea who is fleeing alleged persecution, is in the custody of U.S. Immigration and Customs Enforcement ("ICE"). ICE has detained Mr. Sied most recently since September 28, 2017. ICE previously detained Mr. Sied from January 10, 2016 to January 4, 2017. Mr. Sied argues that there is no foreseeable end to his detention and asks that the court order his release, subject to ongoing supervision by the government.

The court held a hearing on April 19, 2018. For the following reasons, the court does not order Mr. Sied's immediate release. Instead, the court orders that the government must release Mr. Sied (under appropriate conditions of supervision) within 21 days, unless, before that time, Mr. Sied receives an individualized bond hearing before an immigration judge ("IJ") to release him on bond unless he is a flight risk or a danger to the community.

**STATEMENT**

Petitioner Abdul Mehamed Sied was born in 1985 in Asmara, in what was then part of Ethiopia and now is the capital of Eritrea.[1] He and his family are Muslims and members of the Jeberti tribe and lived in the Akriya neighborhood of Asmara.[2]

Mr. Sied attests that the Eritrean government accused him of advocating on behalf of Jebertis and of being part of a government-opposition group and, in response, Eritrean government agents arrested him, detained him for two weeks, beat him with electrical cords, and threatened to break his legs.[3] After they released him, three police officers approached him again a week later, broke his jaw, beat him unconscious, and put him in the hospital.[4] Mr. Sied fled Eritrea and eventually made his way to the United States, arriving on January 10, 2016.[5] When Mr. Sied arrived in the United States, he asked for asylum and withholding of removal under the U.N. Convention Against Torture.[6] ICE transported him to Florida and detained him pending an immigration hearing.[7] Because Mr. Sied does not speak English, another inmate helped him fill out his asylum-request forms.[8] On May 10, 2016, Mr. Sied appeared (alone and without counsel) before an IJ in Miami, who held a hearing and entered a one-page form order denying his request for asylum and withholding of removal and ordering him deported to Eritrea.[9]

The government did not deport Mr. Sied from the United States and return him to Eritrea, apparently because Eritrea historically refused to accept repatriation of its citizens from the United

---

[1] Sied Decl. – ECF No. 3 at 2. Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] *Id.*

[3] *Id.* at 2–3.

[4] *Id.* at 3.

[5] *Id.* at 3–4.

[6] *Id.* at 4.

[7] *Id.*

[8] *Id.*

[9] *Id.*; [First] Sclater Decl. Ex. A (IJ Order) – ECF No. 5 at 4–5. In this context, "the terms 'deportable' and 'deportation' can be used interchangeably with the terms 'removable' and 'removal,' respectively." *Lolong v. Gonzales*, 484 F.3d 1173, 1177 n.2 (9th Cir. 2007) (en banc).

States.[10] Instead, ICE held Mr. Sied in custody in Florida. In November 2016, Mr. Sied filed a pro se habeas petition, and on January 4, 2017, ICE released Mr. Sied on an order of supervision.[11] Following his release, Mr. Sied asked for, and was granted, permission to move from Florida, first to Nevada and then to California.[12] After moving to California, he checked in on a regular basis with ICE officials.[13] He did not have any criminal arrests or problems with the police and complied with the terms of his order of supervision.[14]

On September 13, 2017, the Department of Homeland Security ("DHS"), in coordination with the State Department, announced that the government would impose visa sanctions on Eritrea (and three other countries) "due to lack of cooperation [of these countries] in accepting their nationals ordered removed from the United States."[15] The government announced that "[t]he suspension will remain in place on each of these respective countries until the Secretary of Homeland Security notifies Secretary [of State Rex] Tillerson that cooperation on removals has improved to an acceptable level."[16] Eritrea now has begun cooperating with the government to issue travel documents for its nationals and accept their repatriation from the United States.[17]

---

[10] Press Release, U.S. Dep't of Homeland Sec., *DHS Announces Implementation of Visa Sanctions on Four Countries* (Sept. 13, 2017) (attached as [Second] Rocca Decl. Ex. D – ECF No. 21-2 at 24–27) ("Acting Secretary of Homeland Security Elaine Duke notified Secretary of State Rex Tillerson that the governments of Cambodia, Eritrea, Guinea, and Sierra Leone have denied or unreasonably delayed accepting their nationals ordered removed from the United States. . . . Without a travel document issued by an alien's home country to confirm identity and nationality, ICE cannot complete the removal process, with very limited exceptions. . . . These four countries have not established reliable processes for issuing travel documents to their nationals ordered removed from the United States").

[11] Sied Decl. – ECF No. 3 at 4; Order of Supervision – ECF No. 22 at 11–15.

[12] Sied Decl. – ECF No. 3 at 4.

[13] *Id.*

[14] *Id.*

[15] Press Release, U.S. Dep't of Homeland Sec., *DHS Announces Implementation of Visa Sanctions on Four Countries* (Sept. 13, 2017) (attached as [Second] Rocca Decl. Ex. D – ECF No. 21-2 at 24–27); *see also* Susan B. Glasser, *U.S. Slaps Visa Sanctions on 4 Nations*, Politico, Sept. 13, 2017 (attached as [Second] Rocca Decl. Ex. E – ECF No. 21-2 at 28–31).

[16] Press Release, U.S. Dep't of Homeland Sec., *DHS Announces Implementation of Visa Sanctions on Four Countries* (Sept. 13, 2017) (attached as [Second] Rocca Decl. Ex. D – ECF No. 21-2 at 24–27).

[17] Hubbard Decl. – ECF No. 51-1 at 3 (¶ 19).

On September 28, 2017, Mr. Sied went to ICE for his regular check-in appointment under his order of supervision.[18] When he arrived there, a different ICE officer (not his normal check-in officer) made him sign a paper written in English.[19] No interpreter was present, and Mr. Sied does not know what the paper said.[20] ICE seized him and placed him in custody in the ICE detention facility in Richmond, California.[21] On Wednesday, November 22, 2017, ICE told Mr. Sied that the government was going to deport him to Eritrea.[22]

With the help of pro bono counsel, Mr. Sied filed a petition for writ of habeas corpus, asking this court to enjoin the government from deporting him to Eritrea until he could be heard on a motion to reopen his immigration case before an IJ.[23] On March 2, 2018, the court entered a preliminary injunction ordering that the government may not deport Mr. Sied until (broadly speaking) he wins a final ruling vacating his removal order or, conversely, he loses on his motion to reopen before an IJ and he appeals the adverse ruling to the Board of Immigration Appeals ("BIA") and then to a United States Court of Appeals (or fails at any point to timely appeal). *Sied v. Nielsen*, No. 17-cv-06785-LB, 2018 WL 1142202, at *27 (N.D. Cal. Mar. 2, 2018) (*Sied I*). The Miami IJ that presided over Mr. Sied's original immigration case also entered an order staying the government from removing Mr. Sied until he ruled on Mr. Sied's motion to reopen his immigration case.[24]

On April 9, 2018, a second Miami IJ entered an order denying Mr. Sied's motion to reopen his immigration case.[25] Mr. Sied intends to file a timely appeal to the BIA and file a simultaneous motion with the BIA to stay removal.[26]

---

[18] Sied Decl. – ECF No. 3 at 4.

[19] *Id.*

[20] *Id.*

[21] *Id.*

[22] *Id.* at 5.

[23] Pet. for Writ of Habeas Corpus – ECF No. 1. Subject to certain requirements, aliens have a statutory right to file one motion to reopen their immigration cases. 8 U.S.C. § 1229a(c)(7)(A).

[24] IJ Stay Order – ECF No. 48-1.

[25] IJ Motion to Reopen Order – ECF No. 56-1.

Mr. Sied filed a request for a bond hearing before an IJ. On April 13, 2018, a San Francisco IJ denied Mr. Sied's request, finding that she did not have jurisdiction to set a bond hearing for Mr. Sied.[27]

Mr. Sied currently remains in ICE custody. In total, ICE has detained Mr. Sied for a total of 563 days, or approximately 19 months: (1) 360 days from January 10, 2016 to January 4, 2017, and (2) 203 days (and counting) from September 28, 2017 to today.

## PROCEDURAL HISTORY

Mr. Sied filed a motion asking that the court order that the government (1) immediately place him on supervised release from detention and (2) produce his "A-file" (the comprehensive immigration file DHS maintains for each alien).[28] The government filed a response opposing both requests.[29] Mr. Sied filed a reply, where he (1) reiterated his request for immediate release and asked in the alternative that the court order the government to convene a bond hearing before an IJ, and (2) withdrew his request for production of his A-file because the government had produced 117 pages of material; he stated that he "does not seek further relief at this time, but reserves all rights to move to compel any materials that may have been improperly withheld."[30] The government objected to Mr. Sied's raising a request for a bond hearing for the first time in his reply and moved for leave to file a sur-reply.[31]

---

[26] Notice of Immigration Court Decision – ECF No. 56.

[27] IJ Bond Hearing Order – ECF No. 57-1.

[28] Pet'r Mot. – ECF No. 50.

[29] Resp'ts Opp'n – ECF No. 51.

[30] Pet'r Reply – ECF No. 52 at 18.

[31] Resp'ts Mot. for Leave to File Sur-Reply – ECF No. 55. The government also filed an objection to certain portions of a declaration Mr. Sied attached to his reply. Resp'ts Objs. to Reply Evid. – ECF No. 54. As the court is not relying on those portions of the declaration in its decision, the court overrules the government's objection as moot.

Because there is no live controversy regarding Mr. Sied's A-file, the court does not consider that issue. The court grants the government's motion for leave to file a sur-reply and considered the filed sur-reply.

Mr. Sied orally renewed his motion for release on the record at the April 19, 2018 hearing.

## ANALYSIS

### 1. Governing Law

8 U.S.C. § 1231(a)(1) instructs the Attorney General to remove an alien ordered removed from the United States within a 90-day "removal period," which begins (as relevant here) on the date that the alien's removal order becomes administratively final.[32] If the government does not remove the alien within 90 days, 8 U.S.C. § 1231(a)(6) provides that the alien "may be detained beyond the removal period and, if released, shall be subject to the terms of supervision in [8 U.S.C. § 1231(a)](3)."

The Supreme Court reviewed the constitutionality of detaining aliens beyond the 90-day removal period under Section 1231(a)(6) in *Zadvydas v. Davis*, 533 U.S. 678 (2001). The Court observed that Section 1231(a)(6) does not explicitly set any limit on the length of time that the government may detain an alien who has been ordered removed. *Id.* at 689. The Court held that "[a] statute permitting indefinite detention of an alien would raise a serious constitutional problem." *Id.* at 690. The Court further held that Congress did not clearly intend for Section 1231(a)(6) to grant the government the power to indefinitely detain an alien ordered removed. *Id.*

---

[32] Under 8 U.S.C. § 1231(a)(1)(B), "The removal period begins on the latest of the following: (i) The date the order of removal becomes administratively final. (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the alien, the date of the court's final order. (iii) If the alien is detained or confined (except under an immigration process), the date the alien is released from detention or confinement." Mr. Sied asserts, and the government does not dispute, that the second and third of these conditions do not apply here. Pet'r Mot.– ECF No. 50 at 16 n.9. While the court stayed Mr. Sied's removal, it did not judicially review Mr. Sied's underlying removal order, *see Sied I*, 2018 WL 1142202, at *20 ("Mr. Sied is not requesting a review of his underlying removal order on this habeas petition"), and hence the second condition does not apply. Mr. Sied has also not been detained or confined under any non-immigration process (e.g., a criminal arrest or sentence), and hence the third condition does not apply either.

at 697, 699. Consequently, the Court held that aliens being detained under Section 1231(a)(6) can bring habeas petitions in federal court to seek their release, and if the alien's "removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute." *Id.* at 699–700.[33] The Court noted that "Congress previously doubted the constitutionality of detention for more than six months" and held that "[a]fter this 6-month period, once the alien provides good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must respond with evidence sufficient to rebut that showing." *Id.* at 701.

The Ninth Circuit further examined Section 1231(a)(6) in *Diouf v. Napolitano*, 634 F.3d 1081 (9th Cir. 2011). In that case, the Ninth Circuit held that "an individual facing prolonged immigration detention under 8 U.S.C. § 1231(a)(6) is entitled to release on bond unless the government establishes that he is a flight risk or a danger to the community." *Id.* at 1082. Citing *Zadvydas* and other authorities, the Ninth Circuit held that "[a]s a general matter, detention is prolonged when it has lasted six months and is expected to continue more than minimally beyond six months." *Id.* at 1091–92 & n.13. The Ninth Circuit observed that "[w]hen, for example, this court grants a stay of removal in connection with an alien's petition for review from a denial of a motion to reopen, the alien's prolonged detention becomes a near certainty." *Id.* at 1092 n.13. The Ninth Circuit "construe[d] § 1231(a)(6) as requiring an individualized bond hearing, before an immigration judge, for aliens facing prolonged detention under that provision." *Id.* at 1086 (citing *Casas-Castrillon v. DHS*, 535 F.3d 942, 950 (9th Cir. 2008)). "Such aliens are entitled to release on bond unless the government establishes that the alien is a flight risk or will be a danger to the community." *Id.* (citing *Casas-Castrillon*, 535 F.3d at 950).

---

[33] The Court noted that "[i]n that case, of course, the alien's release may and should be conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the alien may no doubt be returned to custody upon a violation of those conditions. And if removal is reasonably foreseeable, the habeas court should consider the risk of the alien's committing further crimes as a factor potentially justifying confinement within that reasonable removal period." *Zadvydas*, 533 U.S. at 700 (citations omitted).

The Ninth Circuit clarified in a later case, *Singh v. Holder*, 638 F.3d 1196 (9th Cir. 2011), that "the clear and convincing evidence standard of proof applies in *Casas* bond hearings," i.e., "the government must prove by clear and convincing evidence that an alien is a flight risk or a danger to the community to justify denial of bond at a *Casas* hearing." *Id.* at 1203, 1205; *accord, e.g.*, *Ramos v. Sessions*, __ F. Supp. 3d __, No. 18-cv-00413-JST, 2018 WL 13172726, at *4 (N.D. Cal. Mar. 13, 2018) (*Ramos II*) (clear-and-convincing-evidence standard applies to bond hearings held for aliens detained under Section 1231(a)(6)) (citing cases). The Ninth Circuit additionally held that "due process requires a contemporaneous record of *Casas* hearings" and that a transcript or audio recordings would satisfy this requirement but that a memorandum decision alone was insufficient. *Singh*, 638 F.3d at 1208.

**2. Application**

It is undisputed that the government has been detaining Mr. Sied for over six months under Section 1231(a)(6). Under *Zadvydas* and *Diouf*, Mr. Sied is entitled to habeas relief.

### 2.1 Mr. Sied Is Entitled to a Bond Hearing

Under *Diouf* and *Singh*, Mr. Sied is entitled to a bond hearing before an IJ, at which the government must prove by clear and convincing evidence that he is a flight risk or a danger to the community to justify denial of bond.

Mr. Sied asks the court to order his outright release.[34] Courts in this circuit, however, have favored ordering a *Diouf* bond hearing before an IJ over ordering outright release. As the court in *Mansoor v. Figueroa*, No. 3:17-cv-06195-GPC (NLS), 2018 WL 840253 (S.D. Cal. Feb. 13, 2018) — a case Mr. Sied advances — explained:

> Petitioner now seeks his release or, in the alternative, placement in ISAP [the Intensive Supervision Appearance Program]. However, the Court finds Petitioner's request more appropriately suited for determination by an IJ.
>
> . . . .

---

[34] Pet'r Mot. – ECF No. 50 at 2.

ORDER – No. 17-cv-06785-LB            8

> IJs are a specialized and experienced group within the Department of Justice already entrusted to make determinations about the government's legitimate interest in the further deprivation of a noncitizen's liberty. The power to order a bail hearing before an IJ is the type of practice and workable remedy within the district court's broad equitable powers. The Ninth Circuit has further held, both explicitly and implicitly, that courts have the authority to remedy prolonged detention by ordering the government to provide an individualized bond hearing before an IJ. . . . A bond hearing before an IJ aptly provides the government with the opportunity to establish that its detainee is a flight risk or a danger to the community.
>
> . . . . [An] IJ is uniquely qualified and situated to make neutral administrative determinations about Petitioner's eligibility for release on bond and/or placement in a supervised release program such as ISAP. . . . As such, it is appropriate and consistent with Ninth Circuit jurisprudence to provide Respondents with an opportunity to establish such facts before an IJ. Furthermore, it is within the purview of this Court's equitable powers to order Respondents to provide Petitioner with an expeditious bond hearing before an IJ.

*Id.* at *3–4 (citations and internal quotation marks, brackets, and ellipsis omitted); *accord, e.g.*, *Cortez v. Sessions*, No. 18-cv-01014-DMR, 2018 WL 1510187, at *10 (N.D. Cal. Mar. 27, 2018) (ordering bond hearing but not ordering immediate release); *Bahena v. Aitken*, No. 1:17-cv-00145-JLT (HC), 2017 WL 2797802, at *1 (E.D. Cal. June 27, 2017) (report and recommendation) (*Bahena I*) (same), *adopted*, slip op. (E.D. Cal. Nov. 16, 2017), ECF No. 15 (*Bahena II*). An IJ is well suited to determine not only whether Mr. Sied is a flight risk or a danger to the community but also, if he is released, what bond or conditions on his release might be appropriate.

The government argues that the bond-hearing requirement set forth in *Diouf* has been abrogated by the Supreme Court's recent decision in *Jennings v. Rodriguez*, 138 S. Ct. 830 (2018). A brief summary of that case is helpful. "The primary issue [in *Jennings* wa]s the proper interpretation of [8 U.S.C.] §§ 1225(b), 1226(a), and 1226(c)." *Id.* at 838. In the decision below, the Ninth Circuit held that the government must provide bond hearings every six months to aliens detained under Section 1225(b) (aliens initially determined to be inadmissible due to fraud, misrepresentation, lack of valid documentation, or certain other detainable aliens, *see id.* at 837) or Sections § 1226(a) and (c) (aliens who are arrested while a decision on their removal is pending, *see id.*). The Ninth Circuit held that detaining aliens for a prolonged period of time under Sections 1225(b), 1226(a), or 1226(c) would raise serious constitutional concerns. *Id.* at 842. To avoid these problems, the Ninth Circuit had employed the canon of "constitutional avoidance" and "construed §§ 1225(b), 1226(a), and 1226(c) to limit the permissible length of an alien's detention

ORDER – No. 17-cv-06785-LB                 9

without a bond hearing." *Id.* The Supreme Court vacated the Ninth Circuit's decision, holding that there was no basis in the statutory text for the bond-hearing and other procedural requirements that the Ninth Circuit read into Sections 1225(b), 1226(a), or 1226(c). *Id.* at 842–51. The Supreme Court expressly declined to address whether constitutional due process (as opposed to statutory construction) might require the government to provide the bond-hearing and other procedural requirements that the Ninth Circuit had ordered for aliens detained under Sections 1225(b), 1226(a), or 1226(c). *Id.* at 851. It remanded that issue for the Ninth Circuit to decide in the first instance. *Id.*

The government argues that the reasoning of *Jennings* about bond hearings for aliens detained under Sections 1225(b), 1226(a), and 1226(c) undermines *Diouf*'s holding about bond hearings for aliens like Mr. Sied who are detained under Section 1231(a)(6). But *Jennings* explicitly distinguished Sections 1225(b), 1226(a), and 1226(c) from Section 1231(a)(6). *See, e.g.*, *Jennings*, 138 S. Ct. at 843 ("the provision in question in *Zadvydas*, § 1231(a)(6), differs materially from those at issue here"); *id.* at 844, 846–47 (noting that there are specific statutory provisions for releasing aliens detained under Section 1225(b) and Section 1226(c), which implies that courts should not craft other procedures for release such as bond hearings, whereas Section 1231(a)(6) has no similar release provision). *Jennings*'s holding regarding Sections 1225(b), 1226(a), and 1226(c) does not alter or overrule *Diouf*'s holding that the government must provide bond hearings to aliens detained under Section 1231(a)(6). Every court that has addressed this issue has held that *Diouf* remains good law after *Jennings*. *Baños v. Asher*, No. C16-1454JLR, 2018 WL 1617706, at *2 (W.D. Wash. Apr. 4, 2018) ("*Jennings* concerns statutes — §§ 1225 and 1226 — that were not at issue in *Diouf* [] and are not at issue here. In fact, *Jennings* expressly distinguished § 1231(a)(6), the statute at issue here. . . . The court, therefore, concludes that *Diouf* [] remains binding law.") (citations omitted); *Borjas-Calix v. Sessions*, No. CV-16-00685-TUC-DCB, 2018 WL 1428154, at *6 (D. Ariz. Mar. 22, 2018) ("Plaintiff was detained under § 1231(a)(6)[,] not § 1225, et seq. *Jennings* was specifically directed to § 1225, et seq. *Diouf* remains good law and is binding on this Court."); *Cortez*, 2018 WL 1510187, at *7–8 ("*Jennings* expressly contrasted sections 1225 and 1226 with section 1231(a)(6). . . . *Diouf* [] remains good law which this court is

ORDER – No. 17-cv-06785-LB 10

bound to follow."); *Ramos II*, __ F. Supp. 3d __, 2018 WL 1317276, at *3 (*Jennings* . . . expressly contrast[ed] the first statutory category immigrants detained pursuant to sections 1225 and 1226 with the second immigrants detained pursuant to section 1231(a)(6) . . . . [G]iven the Supreme Court's explicit carve-out, *Diouf* remains good law and is binding on this Court."). This court follows these cases as persuasive.

### 2.2 The Government's Argument That Mr. Sied's Motion Is Not Ripe

The government has detained Mr. Sied since September 28, 2017, almost seven months. This is more than the six-month period in *Zadvydas* and *Diouf*. The government argues, however, that Mr. Sied's request for relief is not ripe because at the time he filed his motion — on March 8, 2018 — he was still 20 days short of being detained for six consecutive months. Mr. Sied responds in part that before his most recent detention, the government previously detained him and that time should be included in calculating the six-month *Zadvydas* period. Leaving aside the four months that the government detained Mr. Sied before he first appeared in front of an IJ, the government detained Mr. Sied for an additional eight months (May 2016 to January 2017) after his removal order became final.[35]

Several courts have held that the six-month period does not reset when the government detains an alien under 8 U.S.C. § 1231(a), releases him from detention, and then re-detains him again. *Nhean v. Brott*, No. 17-28 (PAM/FLN), 2017 WL 2437268, at *2 (D. Minn. May 2, 2017) (report and recommendation) (holding that when the government detains an alien for 90 days, releases him, and then re-detains him, the second detention "was presumptively reasonable for an additional 90 days (six months in total)," not an additional six months), *adopted*, 2017 WL 2437246 (D. Minn. June 5, 2017); *Bailey v. Lynch*, No. 16-2600 (JLL), 2016 WL 5791407, at *2 (D.N.J. Oct. 3, 2016) (holding that the six-month *Zadvydas* period "does not restart simply because an alien who [was previously detained and then] has previously been released is taken

---

[35] Prior to the May 2016 IJ hearing, the government's authority to detain Mr. Sied arose under 8 U.S.C. § 1226(a), not 8 U.S.C. § 1231(a). For the sake of simplicity — and because Mr. Sied's Section 1231(a) detention alone amounts to nearly fifteen months — the court does not address the Section 1226(a) detention and addresses only the Section 1231(a) detention.

back into custody"); *Farah v. INS*, No. Civ. 02-4725(DSD/RLE), 2003 WL 221809, at *5 (D. Minn. Jan. 29, 2013) (holding that when the government releases an alien and then revokes the release based on changed circumstances, "the revocation would merely restart the 90-day removal period, not necessarily the presumptively reasonable six-month detention period under *Zadvydas*").[36] Here, where Mr. Sied has been detained under Section 1231(a) for (1) almost 15 total months and (2) almost seven consecutive months, the six-month *Zadvydas* period has expired. *Cf. Nhean*, 2017 WL 2437268, at *2 & n.1 (holding that detention periods should be aggregated; alternatively, if the six-month *Zadvydas* period restarts after an alien is released and then re-detained, calculating the six months from the date the alien was re-detained (August 2016) to the date of the court's order (May 2017), not to the date the alien filed his habeas petition (January 2017)). Given these circumstances, the court will not find Mr. Sied's motion unripe merely because on the date he filed it, his second stint in detention was twenty days short of six months.[37]

### 2.3 The Government's Argument That Mr. Sied Has Not Provided Good Reason to Believe That There Is No Significant Likelihood of Removal in the Reasonably Foreseeable Future

The court previously stayed the government from removing Mr. Sied while his motion-to-reopen process is pending. Orders staying removal while an alien's motion-to-reopen process is pending may constitute a good reason to believe that the alien will not be removed in the reasonably foreseeable future for the purposes of a habeas challenge. *See Diouf*, 634 F.3d at 1092 n.13 ("When, for example, this court grants a stay of removal in connection with an alien's petition for review from a denial of a motion to reopen, the alien's prolonged detention becomes a near certainty."); *Khalafala v. Kane*, 836 F. Supp. 2d 944, 957 (D. Ariz. 2011) ("an intervening

---

[36] In its opposition, the government cites no cases addressing the issue of calculating the six-month *Zadvydas* period when an alien has been detained multiple times or any cases where courts have rejected aggregation. *See* Resp'ts Opp'n – ECF No. 51 at 12–14 (citing, e.g., *Albarado v. Holder*, No. 1:11-cv-00125-JLT HC, 2011 WL 345965, at *1 (E.D. Cal. Feb. 2, 2011) (involving one stint of detention that did not total six months even as of the date of the court's order); *Akinwale v. Ashcroft*, 287 F.3d 1050, 1051 (11th Cir. 2002) (same)).

[37] In any event, at the April 19, 2018 hearing, Mr. Sied moved again for supervised release. Mr. Sied's claim for relief unquestionably was ripe when he made that motion.

stay of removal in connection with the review of a motion to reopen renders prolonged detention a near certainty" and entitles alien to a bond hearing), *aff'd*, No. 12-15008, slip op. (9th Cir. July 11, 2012), ECF No. 13.

The government argues that Mr. Sied is not entitled to relief unless his detention is "indefinite," and despite this court's stay, Mr. Sied "foreseeably remains *capable* of being removed" and hence is not entitled to relief.[38] In support of its argument, the government cites the Ninth Circuit's opinion in *Prieto-Romero v. Clark*, 534 F.3d 1053 (9th Cir. 2008). That case does not address the issues here. First, *Prieto-Romero* addressed an alien detained under 8 U.S.C. § 1226(a), not 8 U.S.C. § 1231(a)(6). Second, and more significantly, the *Prieto-Romero* court did not hold that an alien was not entitled to any habeas relief, such as a bond hearing, unless his detention was "indefinite." To the contrary, the petitioner there had received a bond hearing — three of them, in fact. *Id.* at 1056–57. At the first two hearings, he was denied bond, but on the third hearing, the IJ set bond at $15,000. *Id.* He was unable to pay that amount and therefore remained detained. *Id.* at 1057. He then filed a habeas petition to argue that the government did not have the statutory authority to detain him because his detention had become prolonged and indefinite. *Id.* The question that the Ninth Circuit confronted was whether Section 1226(a) — the statute under which he was detained — gave the government the authority to continue to detain him. *Id.* The Ninth Circuit held that Section 1226(a) authorized his continued detention, even though it was "prolonged." *Id.* at 1062–65. But nothing in that opinion suggests that an alien like Mr. Sied, who is detained under a different statute, must show that his detention is "indefinite" to establish an entitlement to relief such as a bond hearing.

As the Ninth Circuit held in *Casas-Castrillon*, whether a statute like Section 1226(a) authorizes the government to detain certain aliens is a separate issue from whether an individual alien is entitled to procedural protections, such as an individualized bond hearing, to determine whether such detention is necessary in his specific case. *Casas-Castrillon*, 535 F.3d at 948–49

---

[38] Resp'ts Opp'n – ECF No. 51 at 20–21 (emphasis in original).

(citing *Prieto-Romero*, 534 F.3d at 1065). The issue here is the second issue. *Prieto-Romero* addressed only the first issue, and the government's attempt to graft *Prieto-Romero*'s discussion of "indefinite" detention from the first issue onto the second issue fails. *Diouf* rejected the government's argument that aliens are entitled to relief only if their detention is "indefinite." The government's obligation to provide adequate procedural protections (such as bond hearings) "applies not only to indefinite detention, but also to prolonged detention," meaning, detention that exceeds six months. *Diouf*, 634 F.3d at 1087 n.8, 1091–92 & n.13 (citing *Casas-Castrillon*, 535 F.3d at 950).

### 2.4 The Government's Argument That Mr. Sied Presents a Serious Flight Risk

The government argues that Mr. Sied presents a serious flight risk. The court does not address this issue. The government can raise it at a bond hearing before an IJ. *See Mansoor*, 2018 WL 840253, at *3 ("A bond hearing before an IJ aptly provides the government with the opportunity to establish that its detainee is a flight risk or a danger to the community.") (citations omitted). Ultimately, the government bears the burden of proving that Mr. Sied is a flight risk by clear and convincing evidence. *Singh*, 638 F.3d at 1203.

### 2.5 The Logistics of Ordering a Bond Hearing

The court now turns to the logistical issues in ordering relief in the form of a bond hearing.

First, the government argued in its opposition brief that the court cannot compel it to provide Mr. Sied with a bond hearing because the Department of Justice ("DOJ") and the Executive Office for Immigration Review ("EOIR") are not parties to the litigation. The government did not provide to the court any authorities that hold that the court cannot order a bond hearing unless the DOJ or EOIR are parties, and courts in other cases have ordered the government to provide bond hearings in habeas cases where neither was a party. *See, e.g.*, *Mansoor*, 2018 WL 840253, at *4 (ordering bond hearing even though neither DOJ nor EOIR was a party); *Luu v. Demore*, No. C011130MMC, 2001 WL 1006787, at *3 (N.D. Cal. Aug. 23, 2001) (same). At the April 19 hearing, the government indicated that it would convene a bond hearing if ordered to do so by this court (and would be able to do so in 21 days).

Second, an IJ has previously held that she did not have jurisdiction to hold a bond hearing. At the April 19, 2018 hearing, however, the government said that it would be able to convene a bond hearing if this court ordered it, the IJ's decision notwithstanding. Given these circumstances, the court orders the government to convene a bond hearing within 21 days. To avoid any issue about the DOJ's or the EOIR's not being parties, the court frames its order as an order for the named respondents to release Mr. Sied within 21 days unless Mr. Sied receives a bond hearing before that time.[39] The court sets a further status conference for May 3, 2018 at 11:00 a.m. to track any procedural issues.

## CONCLUSION

The court grants in part and denies in part Mr. Sied's motion for supervised release. The court does not order Mr. Sied's immediate release. But the court orders that the respondents must release Mr. Sied within 21 days (under appropriate conditions of supervision), unless, before that time, Mr. Sied receives an individualized bond hearing before an IJ. *Cf. Cortez*, 2018 WL 1510187, at *10 (ordering government to provide bond hearing within 15 days); *Mansoor*, 2018 WL 840253, at *4 (ordering government to provide bond hearing within 20 days); *see also Ramos II*, __ F. Supp. 3d __, 2018 WL 13172726, at *12 (ordering government to release alien under appropriate conditions of supervision). That hearing must comply with the requirements set forth in *Singh*, including the requirements that (1) the government bear the burden of proving by clear and convincing evidence that Mr. Sied is a flight risk or a danger to the community to justify

---

[39] The government does not dispute that the named respondents are the properly named parties who could release Mr. Sied, so even assuming the government is right that the court cannot order the government to hold a bond hearing unless the DOJ or EOIR are named as parties, it can order the government to release Mr. Sied unless Mr. Sied receives a bond hearing, and then trust that the government will find a way to make the bond hearing happen. *Cf., e.g.*, *Singh*, 638 F.3d at 1205–06 (instructing district court to order government to release alien unless he received a bond hearing applying the proper standard); *Ramos v. Sessions*, No. 18-cv-00413-JST, 2018 WL 905922, at *6 (N.D. Cal. Feb. 15, 2018) (*Ramos I*) (ordering government to release alien unless she received a bond hearing within 15 days); *Bahena II*, slip op. at 2 (ordering government to release alien unless he received a bond hearing within 21 days).

denial of bond and (2) a contemporaneous record (e.g., a transcript or audio recording) be made of the hearing.

The parties may extend this 21-day deadline by stipulation.

**IT IS SO ORDERED.**

Dated: April 19, 2018

_____
LAUREL BEELER
United States Magistrate Judge